UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | Case: 2:20-cr-20264 |
| | | Assigned To : Drain, Gershwin A. |
| | Case No. | Referral Judge: Whalen, R. Steven |
| v. | | Assign. Date : 6/18/2020 |
| | Hon. | Description: INFO USA v. SEALED MATTER (SO) |
| HANI ZAHER, R.Ph., | VIO.: | 18 U.S.C. § 1349 |
| Defendant. | | |
| _____/ | | |

**INFORMATION**

THE UNITED STATES ATTORNEY CHARGES:

**GENERAL ALLEGATIONS**

At all times relevant to this Information:

**The Medicare and Medicaid Programs**

1.      The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare covered different types of benefits and was separated into different program "parts." Medicare Part D subsidized the cost of prescription drugs for Medicare beneficiaries in the United States. Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

3. In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans. Medicare drug plans were operated by private health care insurance companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

4. Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

5. The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

6. Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

7. Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

8. Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

### The Private Health Insurance Program

9. Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the

state of Michigan. BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

10. BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

11. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Pharmacy Benefit Managers

12. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

13. After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

14. CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug

plan sponsors) and Medicaid health plans. Express Scripts managed prescription drug benefits for BCBS. CVS Caremark processed and adjudicated claims in Arizona. OptumRx and Express Scripts processed and adjudicated claims outside the state of Michigan.

15. CVS Caremark and other PBMs maintained agreements stating that pharmacies were allowed fourteen (14) days from the date of fill to submit claims for reimbursement to PBMs. These agreements also stated that pharmacies were allowed fourteen (14) days from the date of fill to reverse claims for medications that were not dispensed.

### The Pharmacy

16. Seaway Pharmacy ("Seaway") was a pharmacy and Michigan corporation located at 8750 Telegraph Road, Suite 104, Taylor, Michigan 48180.

### The Defendant

17. Defendant HANI ZAHER, a resident of Wayne County, Michigan, was a licensed pharmacist in Michigan, a half-owner and the pharmacist-in-charge at Seaway, and a signatory on a Seaway bank account that received funds from Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

18. Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

19. From at least in or around 2010, and continuing through in or around 2016, the exact dates being unknown to the United States Attorney, in Wayne County, in the Eastern District of Michigan, and elsewhere, HANI ZAHER and others did willfully and knowingly combine, conspire, confederate, and agree to commit certain offenses against the United States, that is, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

20. It was a purpose of the conspiracy for HANI ZAHER and others to unlawfully enrich themselves and others by, among other things: (a) submitting, and causing the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS through Seaway; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and others sought to accomplish the purpose of the conspiracy included, among others, the following:

21. HANI ZAHER and others maintained a national provider identifier for Seaway in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

22. HANI ZAHER and others, on behalf of Seaway, entered into pharmacy provider agreements with CVS Caremark, OptumRX, and Express Scripts, among other PBMs.

23. HANI ZAHER and others submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid,

Medicaid health plans, and BCBS, on behalf of Seaway for prescription drugs that were not dispensed, at times because the beneficiaries were deceased, and were often medically unnecessary.

24. HANI ZAHER and others submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, on behalf of Seaway by failing to reverse claims for medications that were not dispensed. This failure to reverse claims allowed ZAHER and others to maximize the amount of proceeds obtained from Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

25. HANI ZAHER caused an approximate loss of approximately $944,635.37 million to Medicare, Medicaid, and BCBS because of the false and fraudulent claims that HANI ZAHER and others submitted and caused to be submitted.

All in violation of Title 18, United States Code, Section 1349.

## CRIMINAL FORFEITURE

26. The above allegations contained in this Information are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which HANI ZAHER has an interest, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461.

27. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461, as a result of the foregoing violation, as charged in Count 1 of this Information, the defendant, HANI ZAHER, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

28. Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the foregoing violations, as charged in Count 1 of this Information, the defendant, HANI ZAHER, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

29. Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of Defendant's violations as charged in Count 1 of this Information.

30. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, HANI ZAHER, shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due

diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

REGINA MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

PATRICK J. SUTER
CLAIRE T. SOBCZAK
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice

Dated: June 17, 2020